1 **WO**

6 **IN THE UNITED STATES DISTRICT COURT**

7 **FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Charles and Raquel Rinehart, | No. CV-19-01888-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Gov't Emps. Ins. Co., et al., | |
| Defendants. | |

At issue is the motion to dismiss filed by Defendants Geico General Insurance Company ("Geico General"), Government Employees Insurance Company ("Government Employees"), and Geico Casualty Insurance Company ("Geico Casualty"), collectively referred to as GEICO Defendants, which is fully briefed. (Docs. 25, 30, 35.) For the reasons stated below, the motion is granted in part and denied in part.

**I. Background**

In approximately 2008, Plaintiffs purchased a GEICO policy through geico.com, without knowing the differences between the various GEICO entities.[1] (Doc. 13 at 19.) On September 6, 2018, a vehicle driven by Plaintiffs' teenage daughter was damaged in a collision with another driver. (*Id.* at 5-6.) Plaintiffs were insured by Geico General and the at-fault driver in the collision was insured by Geico Casualty. (*Id.* at 6.) Soon after the

---

[1] GEICO includes Government Employees and its subsidiaries, Geico General and GEICO Indemnity Company, and GEICO Indemnity Company's subsidiary, Geico Casualty. (Doc. 13 at 17.)

accident, Plaintiffs contacted Geico[2] and notified it about the accident, seeking to recover for their daughter's medical bills and the costs to repair the vehicle. (*Id.*) A Government Employees adjuster, Jessie Baranek, asked Plaintiffs whether they wanted their car repaired using their own policy or the at-fault driver's policy. Ms. Baranek explained that Plaintiffs would not have to pay the deductible if they used the at-fault driver's policy, which persuaded Plaintiffs to submit a third-party claim. (*Id.*)

Plaintiffs then submitted a third-party claim to Geico Casualty under the at-fault driver's policy. (*Id.*) Geico Casualty's guarantee gave Plaintiffs the option to get their own estimates, after which Geico Casualty would pay the reasonable costs to correct the covered repairs, or to take the car directly to a GEICO Auto Repair Xpress Service Center ("ARX"). (*Id.* at 7.) Plaintiffs chose to receive an estimate from a GEICO ARX, and Geico Casualty directed Plaintiffs to Service King Paint & Body, LLC ("Service King") for repairs. (*Id.* at 8.) On September 10, 2018, Plaintiffs took their vehicle to Service King. Another Government Employees adjuster, Kevin Dorsch, produced an estimate for $1,525.88. Service King made the repairs, totaling $1,525.88, and returned the vehicle to Plaintiffs on September 11, 2018. (*Id.* at 9.) The same day, Ms. Baranek emailed Plaintiffs, noting the apparent discrepancy between their daughter's injuries and the low repair estimate and lack of structural damage to the vehicle. (*Id.* at 12.)

Suspicious of the low estimate and limited work performed, Plaintiffs took the vehicle to Coach Works Auto Body ("Coach Works") on September 17, 2018 to receive a second opinion. (*Id.*) Matt Radman of Coach Works noted evidence of deficient repairs and began dissembling the vehicle. That day, Plaintiffs contacted Geico Casualty to advise it that the vehicle had not been properly repaired by Service King. (*Id.*) On September 18, 2018, Mr. Radman sent an email to David Edgar, a Geico General and Geico Casualty Auto Damage Supervisor and employee of Government Employees, informing him about the deficient repairs and requesting a meeting for September 21, 2018. (*Id.* at 13.) Mr. Edgar met with Plaintiffs and Mr. Radman on September 21, 2018 and performed an inspection

---

[2] Plaintiffs do not specify which of the GEICO Defendants they contacted at the onset.

on the vehicle. (*Id.*)  On September 25, 2018, Geico Casualty provided Plaintiffs with a new estimate, stating it would pay $4,689.65 for repairs. (*Id.* at 14.)

On October 11, 2018, Coach Works provided Geico Casualty with an updated repair estimate which totaled $8,982.80. (*Id.*)  Geico Casualty only paid $4,990.85 to Coach Works. (*Id.*)  In response, Plaintiffs asked Geico General to open a first-party claim under their policy. (*Id.*)  Geico General explained that it could not open a claim because the repairs in question were already completed.  However, on October 16, 2018, Geico General assigned Plaintiffs a first party claim number, but informed Plaintiffs that it would not pay the outstanding amount. (*Id.* at 14.)  On October 19, 2018, Coach Works generated a final estimate for $8,944.91.  (*Id.* at 15.)  After deducting Geico Casualty's payment of $4,990.85, Plaintiffs still owed $3,954.06 before Coach Works would return the vehicle.  On October 19, 2018, Geico Casualty made an additional payment of $209.99 to Coach works but refused to pay the remainder of the balance.  (*Id.*)  On October 26, 2018, Plaintiffs paid Coach Works $4,763.52[3] to get their vehicle back.

On February 15, 2019, Plaintiffs filed suit in Maricopa County Superior Court. (Doc. 1-3.)  On March 21, 2019, the GEICO Defendants removed to this Court.  On April 3, 2019, Plaintiffs filed their amended complaint (Doc. 13), which is the operative complaint.  Importantly, the amended complaint asserts that all GEICO Defendants are alter egos of each other or were engaged in a joint venture, and therefore any claim against one equally applies to the others.  The amended complaint alleges four counts: (1) breach of the covenant of good faith and fair dealing (against GEICO Defendants), (2) violations of the Arizona Consumer Fraud Act ("ACFA") (against GEICO Defendants and Service King), (3) breach of contract (against GEICO Defendants and Service King), and (4) aiding and abetting tortious conduct (against GEICO Defendants).

The GEICO Defendants move to dismiss all claims against them, except for the breach of contract claim against Geico Casualty. (Doc. 25.)  The motion is now ripe.

**II.  Legal Standard**

---

[3] The remaining balance increased since October 19, 2018 due to storage fees.  (Doc. 13 at 15.)

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The task when ruling on a motion to dismiss "is to evaluate whether the claims alleged [plausibly] can be asserted as a matter of law." *See Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When analyzing the sufficiency of a complaint, the well-pled factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 680, and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2008).

**III.  Discussion**

### A.  Joint Venture and Alter-Ego Theories

In their complaint, Plaintiffs assert that the GEICO Defendants were engaged in a joint venture. (Doc. 13 at 23-25.) To adequately plead a joint venture, Plaintiffs' complaint must allege the existence of (1) a contract; (2) a common purpose; (3) a community of interest; (4) an equal right of control; and (5) participation in profits and losses. *Tanner Companies v. Superior Court*, 696 P.2d 693, 695 (Ariz. 1985) (citation omitted). Plaintiffs' complaint fails to adequately plead a joint venture theory because it does not assert that each of the GEICO Defendants exercised an equal right of control. Equal right of control means that each entity "must share, to some extent, in the control of the venture. In other words, it is sufficient that a venturer has some voice or right to be heard in the control or management of the venture." *Estate of Hernandez by Hernandez-Wheeler v. Flavio*, 930 P.2d 1309, 1313 (Ariz. 1997). Here, Plaintiffs do not contend that each entity had a voice in the enterprise. Rather, Plaintiffs assert that Geico General and Geico Casualty were controlled by Government Employees, and that Government Employees performed all claim handling responsibilities. (Doc. 13 at 24; Doc. 30 at 10.)

Similarly, Plaintiffs allege that the GEICO Defendants are alter egos of one another. (Doc. 13 at 22.) Under an alter ego theory, "when one corporation so dominates and controls another as to make that other a simple instrumentality or adjunct to it, the courts will look beyond the legal fiction of distinct corporate existence, as the interests of justice require[.]" *Walker v. Southwest Mines Dev. Co.*, 81 P.2d 90, 95 (Ariz. 1938). In order to plead an alter-ego theory and pierce the corporate veil, Plaintiffs' complaint must allege facts plausibly showing (1) unity of control exists; and (2) observance of the corporate form would sanction a fraud or promote injustice. *Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 728 (Ariz. 1991). Plaintiffs' complaint does not assert that observance of the corporate form would sanction a fraud or promote injustice. "A fraud or injustice arises if observance of the corporate form would confuse the opposing parties and frustrate their efforts to protect their rights, *while allowing the party responsible to evade liability*." *Keg Rest. Ariz., Inc. v. Jones*, 375 P.3d 1173, 1184 (Ariz. Ct. App. 2016) (emphasis added). Although Plaintiffs were undoubtedly confused by the GEICO corporate structure, they have not contended that the responsible party would evade liability if the corporate veil were not pierced. Plaintiffs still may bring claims against the entities directly involved, and Plaintiffs have not asserted that the GEICO Defendants, individually, lack adequate resources to satisfy a judgment such that alter ego liability is necessary to guarantee recovery. Consequently, Plaintiffs' joint venture and alter ego theories fail as to the GEICO Defendants.

## B. Bad Faith

Generally, Arizona courts will not recognize a duty of good faith and fair dealing in the absence of a contractual relationship. *Centeno v. Am. Liberty Ins. Co.*, No. CV-18-01059-PHX-SMB, 2019 WL 568926, at \*1 (D. Ariz. Feb. 12, 2019) (citation omitted); *see also Silving v. Wells Fargo Bank, NA*, 800 F. Supp. 2d 1055, 1070 (D. Ariz. 2011) (internal quotations omitted) ("[T]he covenant of good faith and fair dealing . . . arises by virtue of a contractual relationship."); *Smith v. Allstate Ins. Co.*, 202 F. Supp. 2d 1061, 1066 (D. Ariz. 2002) ("the existence of a contractual relationship is a prerequisite to an insurer's

duty of good faith"). Here, it is undisputed that no insurance contract existed between Plaintiffs and Government Employees. As a result, Plaintiffs fail to state a bad faith claim against Government Employees. Plaintiffs additionally concede that Geico Casualty is not liable for a third-party bad faith claim. (Doc. 30 at 12.)

Therefore, the Court must determine whether Plaintiffs have stated a bad faith claim against Geico General upon which relief may be granted. First, it is undisputed that Geico General and Plaintiffs entered a contractual relationship by means of Plaintiffs' insurance policy. Next, Plaintiffs allege that Geico General breached its duty of good faith and fair dealing by unreasonably and intentionally neglecting to inspect the vehicle anew when Plaintiffs filed a claim, refusing to pay for additional repairs performed by Coach Works not covered by Geico Casualty, and failing to fully indemnify Plaintiffs. (Doc. 13 at 29-31.)

An actionable first-party bad faith claim arises when the insurer "intentionally denies, fails to process or pay a claim without a reasonable basis for such action." *Rowland v. Great States Ins. Co.*, 20 P.3d 1158, 1163 (Ariz. Ct. App. 2001) (citing *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981)). Also, an insurer may be found liable for bad faith when it unreasonably "seeks to gain financial advantage of its insured through conduct that invades the insured's right to honest and fair treatment." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276 (Ariz. 2000). Construing the complaint in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have adequately pled a bad faith claim against Geico General. The Court will dismiss the bad faith claims brought against Government Employees and Geico Casualty only.

**C. ACFA**

Arizona's consumer fraud statute provides:

> The act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

A.R.S. § 44-1522(A). "To succeed on a claim of consumer fraud, a plaintiff must show a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and consequent and proximate injury resulting from the promise." *Kuehn v. Stanley*, 91 P.3d 346, 351 (Ariz. Ct. App. 2004).

In their complaint, Plaintiffs assert that the GEICO Defendants violated the ACFA by making the following misrepresentations or omissions:

1. ARX promised Plaintiffs would receive "[a] friendly greeting from your specially trained GEICO Auto Damage Adjuster."

2. Once Plaintiffs selected ARX, Plaintiffs received a letter stating, "[a]s your GEICO Auto Damage Adjuster, I will monitor the repair process for you."

3. In the same letter, the adjuster promised, "[b]efore you return to the stop to pick up your vehicle, I will perform a pre-delivery review to verify that the repairs have been completed properly."

(Doc. 13 at 32-33.) To begin, GEICO Defendants contend that representations two and three cannot qualify under the ACFA because they are not statements made "in connection with the sale or advertisement of any merchandise." (Doc. 25 at 14; doc. 35 at 7-9.) The Court agrees. Plaintiffs do not allege that these two misrepresentations were made in connection with the sale or advertisement of ARX's services. Rather, they were made in a letter to Plaintiffs after Plaintiffs had chosen ARX. Consequently, statements two and three could not have induced Plaintiffs to select ARX. (Doc. 13-3.) "The purpose of the [ACFA] is to provide injured consumers with a remedy to counteract the disproportionate bargaining power often present in consumer transactions." *Waste Mfg. & Leasing Corp. v. Hambicki*, 900 P.2d 1220, 1224 (Ariz. Ct. App. 1995). Allowing Plaintiffs' ACFA claim to move forward on two representations that were not part of the bargaining process would not promote the act's purpose.

The Court now turns to the first alleged misrepresentation by Geico Casualty's ARX, that Plaintiffs would receive "[a] friendly greeting[4] from your specially trained

---

[4] The Court presumes that Plaintiffs are not asserting a claim based on the adjuster's failure to give a friendly greeting. Even if the Court presumes incorrectly, any claim based

GEICO Auto Damage Adjuster." Plaintiffs have not asserted that the adjuster was not specially trained or that this lack of training caused them harm. *Kuehn*, 91 P.3d at 351. Rather, Plaintiffs interpret the reference to special training to be a promise of adjuster competence, which the adjuster broke by providing an inaccurate estimate, thereby causing Plaintiffs harm. Interpreting this representation in the light most favorable to Plaintiffs, the Court concludes that Plaintiff's ACFA claim against Geico Casualty survives the motion to dismiss. The Court will otherwise dismiss Plaintiffs' ACFA claim against Geico General and Government Employees.

### D. Breach of Contract

Plaintiffs, in their breach of contract claim, assert that the GEICO Defendants breached the ARX Guarantee, which constituted a contract between the GEICO Defendants and Plaintiffs. (Doc. 13 at 33 (citing Doc. 13-6)). The parties do not dispute that Geico Casualty issued the ARX Guarantee. Plaintiffs also concede that, should their joint venture and alter ego theories fail, their breach of contract claims against Geico General and Government Employees similarly fail. (Doc. 30 at 16.) Because the Court has rejected these two theories, the Court will likewise dismiss the breach of contract claims brought against Geico General and Government Employees.

### E. Aiding and abetting

Under Arizona law, a corporation is liable for aiding and abetting the commission of a tort if: "(1) the primary tortfeasor committed a tort that injured the plaintiff; (2) the secondary tortfeasor defendant knew that the primary tortfeasor's conduct was a breach of its duty; and (3) the secondary tortfeasor substantially assisted or encouraged the primary tortfeasor in the achievement of the breach." *Lambert v. Liberty Mut. Fire Ins. Co.*, No. 2:14-cv-00521-JWS, 2014 WL 5432154, at \*2 (D. Ariz. Oct. 24, 2014); *see also Wells Fargo Bank v. AZ Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 23 (Ariz. 2002). In their complaint, Plaintiffs allege that GEICO Defendants aided and abetted Service King's tortious conduct, specifically, its violations

---

on such a deficiency would fail because Plaintiffs have not alleged that they did not receive a friendly greeting or that the absence of such salutations proximately caused them harm.

of the ACFA. (Doc. 13 at 34.) However, Plaintiffs fail to allege with particularity what affirmative action GEICO Defendants took to substantially assist or encourage Service King's violations of the ACFA. Instead, they merely recite that GEICO Defendants "provided substantial assistance or encouragement to Service King with the intent of promoting the conduct." (Doc. 13 at 34.) "[A] formulaic recitation of the elements of a cause of action will not do" in the face of a motion to dismiss. *Twombly*, 550 U.S. at 555. The Court will therefore dismiss the aiding and abetting claim against the GEICO Defendants.

### F. Leave to Amend

Ordinarily, courts should not dismiss claims without allowing leave to amend. *Knevelbaard Dairies v. Kraft Foods, Inc.*, 232 F.3d 979 (9th Cir. 2000) (noting the Ninth Circuit's "strong policy favoring leave to amend"). Here, however, Plaintiffs have neither asked for leave to amend nor complied with the Court's procedure for doing so.[5] Moreover, Plaintiffs' response memorandum identifies no additional factual allegations that they could include to support their claims. Accordingly, because it appears Plaintiffs have no additional factual allegations to make, the Court will dismiss all claims asserted against Government Employees, all claims except the bad faith claim against Geico General, and all claims except the breach of contract claim against Geico Casualty without leave to amend.

**IT IS ORDERED** that the GEICO Defendants' motion to dismiss (Doc. 25) is **GRANTED IN PART** and **DENIED IN PART**, as detailed above. Defendant Government Employees is dismissed from this case.

**IT IS FURTHER ORDERED** that the Clerk of Court is directed to terminate

---

[5] Pursuant to the Court's standard order discussing motions to dismiss: "[I]f Defendant files a motion under Rule 12(b)(b) [] notwithstanding Plaintiff's belief that further amendment of the complaint can cure the alleged defect(s), Plaintiff must submit, no later than the time Plaintiff files a response to the motion, a proposed amended complaint that complies with LRCiv 15.1(a) and contains all further allegations Plaintiff could make. In the event a motion to dismiss or for judgment on the pleadings is granted in any part, no leave to amend the complaint will be granted beyond what is offered in the proposed amended complaint." (*See* Doc. 6 at 2.) Plaintiffs did not lodge a proposed amended complaint with their response memorandum.

Defendant Government Employees and enter judgment in its favor. The Clerk of Court is additionally directed to dismiss every claim against Geico General except the bad faith claim, and to dismiss every claim against Geico Casualty except the breach of contract and ACFA claim.

Dated this 10th day of December, 2019.


Douglas L. Rayes
United States District Judge